**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 25 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CONTINENTAL CASUALTY
COMPANY, an Illinois corporation,

Plaintiff-Appellee,

v.

KOOL RADIATORS INCORPORATED,
an Arizona corporation,

Defendant-Appellant.

No.    15-16023

D.C. No. 2:13-cv-02379-JJT

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted April 3, 2017
Pasadena, California

Before:  BEA and OWENS, Circuit Judges, and CHHABRIA,[**] District Judge.

We affirm the grant of summary judgment in favor of Continental Casualty.

Stephen Evans asked Kool Radiators to invest in Aegis Jet, a company that

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Vince Chhabria, United States District Judge for the Northern District of California, sitting by designation.

Evans partially owned. Kool Radiators later sued Evans in connection with this transaction and won. As a judgment creditor, Kool Radiators stands in the shoes of Evans in this case. *See Carpenter v. Superior Court*, 422 P.2d 129, 131 (Ariz. 1966).

To be covered by the Continental Casualty professional liability insurance policy, Evans's conduct must have met the policy's definition of "professional services." The policy specified that "professional services" are either work performed for remuneration for HarnerEvans or approved pro bono work:

> **Professional services** mean those services:
> A.    performed in the practice of public accountancy by **you** for others for remuneration that inures to the benefit of the **Named Insured** [that is, HarnerEvans], including but not limited to consulting services and **investment advisory services**;
> B.    pro bono services . . . , if at the time such services were undertaken, a partner, officer or director of the **Named Insured** approved the rendering of such services without compensation . . . .[1]

There is no evidence in the district court record that the investment solicitation by Evans was for remuneration inuring to the benefit of HarnerEvans. Nor is there any evidence that the investment solicitation constituted pro bono work. Pro bono services are unpaid, with the possible exception of court-ordered fees at the end of some lawsuits. *See Blum v. Stenson*, 465 U.S. 886, 894–95 (1984) (quoting *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 681 (N.D. Cal. 1974),

---

[1] The policy places defined terms in bold font.

*rev'd on other grounds*, 436 U.S. 547 (1978)); *Pro Bono*, Black's Law Dictionary (10th ed. 2014) (defining "pro bono" as "[u]ncompensated, esp. regarding free legal services performed for the indigent or for a public cause"). Evans stood to benefit from the investment in Aegis Jet because he had a financial stake in the company as a partner. And Evans paid himself $32,000 from the Aegis Jet bank account holding the Kool Radiators investment, just one day after Kool Radiators made the investment. Soliciting an investment in a company in which Evans had a financial stake, and then taking some of that money for himself, was not pro bono investment advice.

Because the investment solicitation by Evans fell outside the policy's definition of covered "professional services," we decline to address Continental's arguments that coverage was separately foreclosed by the fraud exclusion or by the "prior knowledge" provision in the policy.

**AFFIRMED.**